UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HIWATHA GATHING,

          Plaintiff,

vs.

MERS, INC., *et al.*,

          Defendants.

_____/

Case No. 1:09-cv-7

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

Plaintiff filed this *pro se* action seeking damages and equitable relief arising from

a mortgage foreclosure of certain property located in Benton Harbor, Michigan.  This matter is now

before the court on three motions: a motion for "summary judgment/dismissal" filed by defendants

MERS, Inc., HSBC Bank, N.A., Litton Loan Servicing, LP, and "Wells Fargo as Trust ADM/MS"

(docket no. 38); a "motion for dismissal/summary judgment" by defendants Popular Mortgage

Service, Inc. and Doug Battin (docket no. 42); and a "motion for summary judgment/dismissal" filed

by defendants Richard A. Green and the Law Offices of Richard A. Green (docket no. 45).

### I.       Background

Plaintiff has sued the following defendants: Mortgage Electronic Registration System

("MERS"); First National Mortgage Sources, LLC ("First National Mortgage), a mortgage

brokerage company; HSBC USA National Assocation ("HSBC"), a nationally chartered bank and

subsidiary of HSBC Holdings PLC; Popular Mortgage Servicing Inc. ("PMSI"), a servicing agent

for HSBC; Doug Battin ("Battin"), identified as an employee of PMSI as "Vice President of Default

Administration" and an agent of MERS; the Law Offices of Richard A. Green;"[1] Richard A. Green ("Attorney Green"), "a natural person" employed by the Law Offices of Richard A. Green as "an attorney debt collector;" "Wells Fargo as Trust ADM/MS ("Wells Fargo"); and Litton Loan Servicing ("Litton"), a servicing agent for Wells Fargo.

In her 166-paragraph complaint, plaintiff alleged that defendants violated federal and state law when they foreclosed a mortgage held on her residence. "*Pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings." *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999). It is well established that "*pro se* complaints are held to 'less stringent standards than formal pleadings drafted by lawyers.'" *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Keeping in mind that plaintiff is proceeding *pro se*, the court will summarize the key dates, events and claims as set forth in her complaint.

## A. The September 6, 2005 mortgage transaction

Plaintiff is a 54-year-old woman who owned the subject property, at 400 Western Avenue, Benton Harbor, Michigan for over five years. Compl. at ¶ 31. Plaintiff characterized herself "as a senior citizen with limited education and income, but substantial equity in her home," who "was a prime target for predatory mortgage lenders and brokers." *Id.* at ¶ 33. In July 2005, First National Mortgage contacted plaintiff for the purpose of finding her a 30-year fixed low interest rate loan that would reduce plaintiff's mortgage payments and allow her "to take some cash out for home improvements." *Id.* at ¶ 35. First National Mortgage informed plaintiff that based on her credit score, the mortgage lender had given her a 30-year fixed loan with an interest rate of 6.75% and monthly payments of $462.13. *Id.* at ¶ 38.

---

[1] Plaintiff sometimes refers to the "Law Offices of Richard A. Green" as "Richard A. Green, P.C."

Plaintiff alleged that at an unspecified date, she signed "disclosures" with First National Mortgage, "including the Good Faith Estimate, showing that Plaintiff would receive a fixed interest rate of 6.75%, a loan in the amount of $71,250.00, with payments of $462.13 per month for 30 years." *Id.* at ¶ 39. On September 6, 2005, plaintiff closed the mortgage loan from the lender, Peoples Choice Home Loan ("Peoples Choice") in the principal amount of $71,250.00.[2] *Id.* at ¶¶ 8, 40. Plaintiff spent the entire loan proceeds for personal, family or household purposes. *Id.* at ¶ 40. On that date, plaintiff received the following documents (which she refers to as "the disclosures"): a mortgage to MERS (as the nominee for the lender) to secure a $71,250.00 loan; an adjustable rate note payable to the lender, for a term of 30 years, with an initial interest rate of 7.500%, a maximum interest rate of 13.500% and initial monthly payments in the amount of $498.20; a Truth in Lending Disclosure Statement, listing a payment schedule of 24 monthly payments of $498.20, 335 monthly payments at an adjusted amount of $595.34, and a final monthly payment of $593.28, and an annual percentage rate of 9.720%; a HUD-1 Settlement Statement; a notice of right to cancel required by the Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"); an itemization of amount financed; and a Uniform Residential Loan Application. *Id.* at ¶¶ 41,43; *see* docket nos. 1-2 through 1-8. Plaintiff alleged that she received an "unsigned" Uniform Residential Loan Application ("Loan Application"). Compl. at ¶ 41; *see* docket no. 1-8. The copy of the Loan Application has the interest rate of "6.750" struck through and replaced by "7.50%." *See* docket no. 1-8.

At the closing, plaintiff was given a copy of "the disclosures" listed above. *Id.* at ¶¶ 42- 43. At that time, "was rushed through signing the documents and did not have time to

---

[2] Peoples Choice is not a party to this litigation.

adequately review each document." *Id.* at ¶ 44.  Plaintiff "was in shock" regarding the terms of the loan, which she described as follows:

> 7.5% adjustable rate mortgage with a 3% adjustment after 2 yrs and further adjustments every 6 months thereafter, broker fees of $500.00, application fees of $395.00, loan origination fee of $2700.00 [sic], cash to borrower of $477.92, far from the $4000.00 [sic] that she was told she would receive by First National Mortgage's representative.

*Id.* at ¶ 45.  Plaintiff alleged that she was not informed of the terms of the loan or the new interest rate at the closing.  *Id.* at ¶ 47.  Based on these allegations, plaintiff contends that she was entitled to rescind the loan.  *Id.* at ¶ 48.

### B.  The foreclosure proceedings

On May 12, 2008, about 2 ½ years after plaintiff obtained the mortgage, the Law Offices of Richard A. Green and Attorney Green initiated a non-judicial foreclosure against the property.  *Id.* at ¶ 49; *see* docket no. 1-11.  On May 17, 2008, plaintiff found a foreclosure notice on her front door announcing a trustee's sale to be held on July 10, 2008.  Compl. at ¶ 50.

Plaintiff received "another collection notice" on or about June 5, 2008, informing her that the Law Offices of Richard A. Green was retained to initiate the foreclosure by PMSI as the servicing agent for HSBC.  *Id.* at ¶ 53; *see* docket no. 1-12.  When plaintiff attempted to verify that PMSI and HSBC had an interest in the mortgage, she discovered only one recorded assignment of mortgage at the Berrien County Register of Deeds, that being an assignment to INVESTAID CORPORATION of Southfield, Michigan.  *Id.* at ¶¶ 55-56; *see* docket no. 1-13.  The INVESTAID assignment is not related to plaintiff's current dispute.[3]

---

[3] The court notes that this document assigned a *previous* mortgage that plaintiff made to INVESTAID CORPORATION (dated February 13, 2003, recorded March 6, 2003 in Liber 2352, Page 649) and is not related to the mortgage at issue in this action, which was executed on or about September 6, 2006. *See* docket no. 1-13.

Plaintiff alleged that on June 5, 2008, defendants caused a notice of foreclosure for the property to be published and advertised in a Berrien County newspaper. Compl. at ¶ 57; *see* docket no. 1-14. Then, on or about June 10, 2008, defendants recorded an assignment of the mortgage from MERS to HSBC. Compl. at ¶ 58; *see* docket no. 1-15. The assignment was executed by Battin at the authorized agent of MERS, the assignor. *Id.* The foreclosure sale was held on July 24, 2008, and a "Sheriff's Deed on Mortgage Sale" executed on that date. *See* docket no. 1-16. Plaintiff alleged that the mortgage foreclosure was defective, apparently because the assignment was not recorded until June 10, 2008, after the first foreclosure notice was published on June 5, 2008. Compl. at ¶ 60, citing M.C.L. § 600.3204(1)(d); *see* docket no. 1-14. Based on these facts, plaintiff alleged that the foreclosure sale did not satisfy the statutory requirements for publication, that HSBC "lacked standing to bring the action." Compl. at ¶¶ 61-62.

### C. Plaintiff's rescission

Plaintiff alleged that she rescinded the mortgage transaction on August 26, 2008 (approximately one month after the foreclosure sale), when she mailed a copy of the notice of rescission to HSBC's registered agent and the agent accepted it. Compl. at ¶¶ 48, 61-65; *see* docket no. 1-9. Plaintiff further alleged that more than twenty days passed since she "rescinded the transaction" and HSBC failed to take action necessary "to reflect the termination of any security interest created under the transaction, as required by 15 U.S.C. § 1635(b) and Regulation Z, § 226.23(d)(2)." *Id.* at ¶ 66.

**D.      Factual allegations as to Litton and Wells Fargo**

On or about October 15, 2008, plaintiff received "a notice of assignment, sale or transfer of servicing rights" informing her that PMSI had transferred servicing rights to Litton effective as of November 1, 2008.  Compl. at ¶ 70; *see* docket no. 1-19.  Plaintiff also received a notice entitled "Servicing Transfer Information," dated November 8, 2008, which included two payment coupons in the amount of $783.38 due on February 1, 2008 and March 1, 2008.  Compl. at ¶¶ 71-72.; *see* docket no. 1-21. The bottom of the notice included the following statement:

> LITTON LOAN SERVICING LP IS A DEBT COLLECTOR.  THIS LETTER IS AN ATTEMPT TO COLLECT YOUR DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

*See* docket no. 1-21.  Plaintiff also received a validation of debt notice from Litton, stating that as of November 13, 2008, the current amount of the debt was $78,892.66, that the debt was owed to Wells Fargo and that Litton was collecting the debt on behalf of Wells Fargo.  Compl. at ¶ 73; docket no. 1-21.

On or about December 5, 2008, plaintiff received a notice from Litton informing plaintiff that they refused to rescind her loan. Compl. at ¶ 74; *see* docket no. 1-22.  The notice provided in pertinent part as follows:

> People's Choice Home Loan, Inc. originated the loan on September 6, 2005.  The name and current holder of the debt is HSBC Bank Usa [sic], National Association, As Indenture Trustee For The Benefit Of People's Choice Home Loan Securities Trust Series 2005-4.  We are unable to honor your request to rescind the loan.  In an effort to provide you with information on the account, enclosed are copies of the Adjustable Rate Note, Mortgage, and RESPA Servicing Disclosure related to the account.  According to the terms of the original agreement, if the loan is in default, the mortgage servicer is permitted to refer the loan for legal action, if necessary.

*See* docket no. 1-22.  Plaintiff filed this action on January 5, 2009, alleging 3 federal claims and 15 state claims.

## II. Plaintiff's claims

### A. Plaintiff's Federal claims

In Count 1, plaintiff alleged that First National Mortgage, the "Lender," and HSBC (as the assignee of the mortgage) violated TILA, 15 U.S.C. § 1635(a) and "Regulation Z § 226.23(b)," when they failed to deliver all material disclosures required by HOEPA,[4] TILA and Regulation Z. Compl. at ¶¶ 85-92.

In Count 2, plaintiff alleged that HSBC failed to honor her rescission of the transaction as required by TILA, 15 U.S.C. § 1635(b) and "Regulation Z § 226.23(d)(2)." *Id.* at ¶¶ 93-102.

Finally, in Count 15, plaintiff alleged that PMSI, Battin, Law Offices of Richard A. Green, Attorney Green, Litton and Wells Fargo violated the Fair Debt Collection Practices Act (FDCPA) at 15 U.S.C. §§ 1692e(2), 1692e(5), 1692f and 1692f(6).

### B. Plaintiff's state claims

The court will summarize plaintiff's 15 state law claims below.

In Count 3 ("Negligence"), plaintiff alleged that HSBC negligently ejected her from her home because the foreclosure performed by PMSI, Battin, Law Offices of Richard A. Green and Attorney Green was void.

In Count 4 ("Wantonness"), plaintiff alleged that HSBC, PMSI, Battin, Law Offices of Richard A. Green and Attorney Green acted with reckless indifference in ejecting plaintiff from her home.

---

[4] Plaintiff is apparently referring to the Home Ownership Equity Protection Act of 1994, an amendment to TILA.

In Count 5 ("Trespass"), plaintiff alleged that after wrongfully foreclosing upon her home, PMSI, Battin, Law offices of Richard A. Green, Attorney Green and HSBC unlawfully caused the sheriff's deed to be recorded in the Berrien County Register of Deeds.

In Count 6 ("Abuse of process"), plaintiff alleged that PMSI, Law Offices of Richard A. Green, Attorney Green and Battin maliciously initiated the foreclosure at the direction and control of HSBC. For its part, HSBC abused process because it foreclosed on the property knowing that plaintiff was "the rightful owner of her home."

In Count 7 ("Slander of Title"), plaintiff alleged that PMSI, Law Offices of Richard A. Green, Attorney Green, and Battin caused a cloud to be placed on the title of her property by recording a void Sheriff's Deed.

In Count 8 ("Slander of Credit"), plaintiff alleged that defendants impaired her credit "causing her to lose the ability to have good credit entitling her to damages."

In Count 9 ("[Respondeat] superior liability as to HSBC and MERS"), plaintiff alleged that HSBC and MERS directed and controlled "its employees, agents and servants" as well as other defendants, to commit wrongful actions and engage in a joint venture and civil conspiracy to unjustly enrich themselves.

In Count 10 ("Negligent or wanton hiring, supervision, training or retention all defendants"), plaintiff alleged that First National Mortgage, HSBC, PMSI, Attorney Green and Wells Fargo "negligently or wantonly hired, trained, supervised or retained its agents, employees or servants in this action."

In Count 11 ("Joint venture liability"), plaintiff alleged that First National Mortgage, HSBC, PMSI, Law Offices of Richard A. Green and Wells Fargo engaged in a joint venture that injured plaintiff.

In Count 12 ("Wrongful foreclosure"), plaintiff alleged that HSBC, PMSI, Law Offices of Richard A. Green and MERS completed a foreclosure proceeding against plaintiff in violation of the law.

In Count 13 ("Unjust enrichment"), plaintiff alleged that MERS, HSBC, PMSI, Law Offices of Richard A. Green, Attorney Green and Battin were unjustly enriched by the foreclosure of plaintiff's home.

In Count 14 ("Breach of fiduciary duty"), plaintiff alleged that defendants violated fiduciary duties owed to her.

In Count 16 ("The State Act"), plaintiff alleged that defendants violated M.C.L. § 445.251 *et seq*., i.e., Michigan's act to regulate the collection practices of certain persons.

In Count 17 ("The Occupation Code"), plaintiff alleged that defendants violated statutes relating to debt collection, M.C.L. §§ 339.915, 339.915(e), and 339.915(n).

Finally, in Count 18 ("Civil conspiracy"), plaintiff alleged that MERS, HSBC, PMSI, Battin, Law Offices of Richard A. Green and Attorney Green engaged in a conspiracy to foreclose home loans "for the purpose of unjustly enriching themselves in violation of the law."

### III.    Defendants' motions for summary judgment

Defendants MERS, HSBC, Litton, Wells Fargo, PMSI, Battin, Law Offices of Richard A. Green  and Attorney Richard Green have filed motions for summary judgment.  *See*

docket nos. 38, 43 and 45.[5]  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d  at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

---

[5] The court notes that plaintiff has not served defendant First National Mortgage.  The summons issued to this defendant was returned as unexecuted, with no forwarding address.  *See* docket no. 39.

**A.      Plaintiff's federal claims**

**1.      Counts 1 and 2 (TILA claims)**

Count 1, which is directed against First National Mortgage, "Lender" (i.e., non-party People's Choice) and HSBC (as assignee of the mortgage) for failing to deliver disclosures in violation of TILA, 15 U.S.C. § 1635(a) and "Regulation Z § 226.23(b)," seeks actual and statutory damages under TILA. Count 2 is directed at HSBC for failing to honor plaintiff's rescission.

**a.      HSBC (Counts 1 and 2)**

HSBC has move for summary judgment on both counts. Plaintiff brings Count 1 pursuant to 15 U.S.C. § 1640(a), which provides in pertinent part as follows:

> Except as otherwise provided in this section, any creditor who fails to comply with any requirement imposed under this part, including any requirement under section 1635 of this title . . . with respect to any person is liable to such person in an amount equal to the sum of--
>
> (1) any actual damage sustained by such person as a result of the failure;
>
> (2)(A) (i) in the case of an individual action twice the amount of any finance charge in connection with the transaction . . ., or (iii) in the case of an individual action relating to a credit transaction not under an open end credit plan that is secured by real property or a dwelling, not less than $400 or greater than $4,000 . . . .
>
> (3) in the case of any successful action to enforce the foregoing liability or in any action in which a person is determined to have a right of rescission under section 1635 of this title, the costs of the action, together with a reasonable attorney's fee as determined by the court . . .

15 U.S.C. § 1640(a).[6]  An action for damages under § 1640(a) is subject to a one-year statute of

limitations.  *See* 15 U.S.C. § 1640(e) ("[a]ny action under this section may be brought in any United

States district court, or in any other court of competent jurisdiction, within one year from the date

of the occurrence of the violation").

    Both plaintiff's claim for damages (Count 1) and request to rescind (Count 2) arise

from an alleged violation of § 1635(a), which requires the creditor to disclose to the consumer the

right to rescind the credit transaction within three business days:

> Except as otherwise provided in this section, in the case of any consumer
> credit transaction (including opening or increasing the credit limit for an open end
> credit plan) in which a security interest, including any such interest arising by
> operation of law, is or will be retained or acquired in any property which is used as
> the principal dwelling of the person to whom credit is extended, the obligor shall
> have the right to rescind the transaction until midnight of the third business day
> following the consummation of the transaction or the delivery of the information and
> rescission forms required under this section together with a statement containing the
> material disclosures required under this subchapter, whichever is later, by notifying
> the creditor, in accordance with regulations of the Board, of his intention to do so.
> The creditor shall clearly and conspicuously disclose, in accordance with regulations
> of the Board, to any obligor in a transaction subject to this section the rights of the
> obligor under this section. The creditor shall also provide, in accordance with
> regulations of the Board, appropriate forms for the obligor to exercise his right to
> rescind any transaction subject to this section.

15 U.S.C. § 1635(a).

    "In the event that the consumer has not been duly notified of her right to rescind,

Regulation Z extends the right to rescind to three years unless the property has been sold or all of

the consumer's interest in the property has been transferred. 12 C.F.R. § 226.23(a)(3)."  *Sibby v.*

*Ownit Mortgage Solutions, Inc.*, 240 Fed.Appx. 713, 715 (6th Cir. 2007).  "The obligor's continuing

---

[6] The court notes that the statute was amended after plaintiff filed this action.  *See* Pub. L. 111-24, § 3, Title I, § 107, 123 Stat. 1735, 1743 (May 22, 2009) (implementing amendments effective nine months after May 22, 2009).

right of rescission 'shall expire three years after the date of consummation of the transaction or upon sale of the property, whichever occurs first, notwithstanding the fact that' the required disclosures have not been made." *Mills v. EquiCredit Corporation*, 172 Fed. Appx. 652, 656 (6th Cir. 2006), quoting 15 U.S.C. § 1635(f).

Both of plaintiff's TILA claims are without merit. As an initial matter, plaintiff has failed to state a cause of action for failure to make a disclosure under § 1635(a). Plaintiff alleged in the complaint that she received the disclosure (i.e., a "Notice of Right to Cancel") at the closing. Compl. at ¶ 41; docket no. 1-6. This notice advised plaintiff of her "legal right under federal law to cancel this transaction, without cost, within THREE BUSINESS DAYS" from the later of the date of the transaction (September 6, 2005), the date she received the Truth in Lending disclosures, or the date she received the notice to cancel. *See* docket no. 1-6. The notice also advised plaintiff that she had to mail her notice to cancel the transaction "no later than MIDNIGHT of 09/09/2005." *Id.* Plaintiff's pleadings demonstrate that she received the notice required by § 1635(a).

Even if First National Mortgage and the lender had failed to make the disclosure, plaintiff's continuing right to rescind under 15 U.S.C. § 1635(a) and 12 C.F.R. § 226.23(a)(3) expired when the property was sold on July 24, 2008. *See, e.g., Worthy v. World Wide Financial Services, Inc.*, 347 F.Supp.2d 502, 506-507 (E.D.Mich. 2004), affirmed 192 Fed.Appx. 369 (6th Cir.2006) (no right to rescind mortgage transaction under TILA after a foreclosure sale). For these reasons, plaintiff had no right to rescind the mortgage transaction on August 26, 2008. Furthermore, even if plaintiff could demonstrate a TILA violation, her claim is untimely. The alleged violation occurred on September 6, 2005. However, plaintiff did not file this action until January 5, 2009,

more than three years after the violation.  Accordingly, HSBC is entitled to summary judgment on plaintiff's TILA claims as alleged in Counts 1 and 2.[7]

### b.     First National Mortgage (Count 1)

Plaintiff was allowed to file the present action *in forma pauperis* pursuant to 28 U.S.C. § 1915.  As such, her action is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that the court "shall dismiss" actions brought *in forma pauperis* "at any time if the court determines that . . . the action . . .fails to state a claim on which relief may be granted."  For the reasons stated above, plaintiff's Count 1 failed to state a claim for relief against First National Mortgage for a TILA violation.  Accordingly, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court should dismiss plaintiff's claims alleged in Count 1 against First National Mortgage.

### 2.     Count 15 (FDCPA claims)

In Count 15, plaintiff alleged that defendants PMSI, Battin, Law Offices of Richard A. Green, Attorney Green, Litton and Wells Fargo violated four sections of the FDCPA:15 U.S.C. § 1692e(2);  15 U.S.C. § 1692e(5);15 U.S.C. § 1692f; and 15 U.S.C. § 1692f(6).[8]

Title 15 U.S.C. § 1692e(2) and (5) prohibit debt collectors from engaging in certain activity:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without

---

[7] In ¶ 74 of the complaint, plaintiff alleged that Litton refused to rescind her loan, and in ¶ 75 she alleged that Wells Fargo violated TILA.  Plaintiff, however, does not include either Litton or Wells Fargo in the TILA violations alleged in Counts 1 and 2.  *See* ¶¶ 85-102.  Nevertheless, even if the court were to construe plaintiff's complaint as alleging TILA claims for rescission against Litton and Wells Fargo, those claims would fail for the same reasons.

[8] The court notes that HSBC and MERS joined in the motion filed by Wells Fargo and Litton seeking summary judgment on plaintiff's FDCPA claims.  Defendants Brief at 12-13.  *See* docket no. 38.  However, this relief is unnecessary, because plaintiff did not allege an FDCPA claim against either HSBC or MERS.

limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(2) The false representation of--

(A) the character, amount, or legal status of any debt

\*       \*       \*

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

Here, plaintiff alleged that defendants violated § 1692e(2) "by misrepresenting the character, amount and legal status of an allege[d] debt" and violated § 1692e(5) "by recording a void assignment of mortgage and threatening to take other actions prohibited by law."   Compl. at ¶¶ 155-156.

Title 15 U.S.C. §§ 1692f and 1692f(6) prohibit a debt collector from engaging in unfair or unconscionable conduct in collecting debts:

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .

(6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

(A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B) there is no present intention to take possession of the property; or

(C) the property is exempt by law from such dispossession or disablement.

Plaintiff alleged that defendants violated § 1692f "by using unfair, deceptive and unconscionable means in an attempt to collect an alleged debt by initiating and continuing an unlawful foreclosure proceeding, conducting a void sheriff's sale and recording a void sheriff's deed" and by attempting

"to collect a debt not due and owing." Compl. at ¶¶ 154 and 157. In addition, plaintiff alleged that defendants violated § 1692f(6) "by recording a void assignment of mortgage and threatening to take other actions prohibited by law." Compl. at ¶ 156.

### a. PMSI and Battin

PMSI and its employee, Battin, contend that they are not liable under the FDCPA claims because they are not "debt collectors" as defined in the act. The FDCPA contains the following definitions of "debt" and "debt collector":

(5) The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

(6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests. The term does not include--

(A) any officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor;

(B) any person while acting as a debt collector for another person, both of whom are related by common ownership or affiliated by corporate control, if the person acting as a debt collector does so only for persons to whom it is so related or affiliated and if the principal business of such person is not the collection of debts;

(C) any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties;

(D) any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt;

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

15 U.S.C. § 1692a(6).

The record reflects that PMSI serviced plaintiff's mortgage from July 1, 2007 through November 1, 2008. *See* docket nos. 1-10 and 1-19. Title 15 U.S.C. § 1692a(6)(F)(iii) provides that the term "debt collector" does not include a person collecting or attempting to collect a debt to the extent that such activity "concerns a debt which was not in default at the time it was obtained by such person." "The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Perry v. Stewart Title Company*, 756 F.2d 1197, 1208 (5th Cir. 1985), *modified on other grounds*, 761 F.2d 237 (5th Cir. 1985). *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103 (6th Cir. 1996) (no FDCPA claim against a loan servicer because it acquired contracts at the time of sale and before default).

There is no evidence that plaintiff was in default when PMSI began servicing the mortgage loan in July 2007. PMSI first notified plaintiff that her account was in arrears on April

1, 2008, several months after it had been servicing the loan. *See* docket no. 45-6. Under these circumstances, PMSI was not a "debt collector" for purposes of the FDCPA. In addition, there is no allegation that Battin attempted to collect the debt from plaintiff. His only activity involved executing an assignment of the MERS mortgage to HSBC. Accordingly, both PMSI and Battin are entitled to summary judgment with respect to plaintiff's FDCPA claim.

## 2. Law Offices of Richard A. Green and Attorney Green

As an initial matter, defendants Law Offices of Richard A. Green and Attorney Green (collectively referred to as the "Green defendants") contend that they are not debt collectors under the FDCPA, because they were lawyers pursuing a mortgage foreclosure action for a financial institution that possessed a secured interest in the property. Defendants rely on *Williams v. Trott*, 822 F. Supp. 1266 (E.D. Mich. 1993), in which the court determined that the defendant law firm did not act as "debt collectors" under the FDCPA, where the attorneys did not send a demand letter to the debtors, but accommodated the debtors by providing requested information regarding reinstatement of a mortgage to avoid foreclosure. The court in *Williams* observed that while the literal language of the FDCPA covered attorneys in collection actions, it did not apply where an attorney did not act as a debt collector in a mortgage foreclosure. *Williams*, 822 F. Supp. at 1268. However, two years later, the Supreme Court held that the FDCPA "applies to attorneys who 'regularly' engage in consumer - debt - collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995).[9] *See generally, Kistner v. Law Offices of*

---

[9] In *Williams*, the court relied on the decision in *Green v. Hocking*, 792 F. Supp. 1064 (E.D. Mich. 1992), *affirmed* 9 F.3d 18 (1993), in which "the court held that an attorney who filed a debt collection action on behalf of his client was not a 'debt collector' under the Act." *Williams*, 822 F. Supp. at 1268. The Supreme Court subsequently rejected the Sixth Circuit's position in *Green*, adopting the Seventh Circuit's position that that the FDCPA "does apply to lawyers engaged in litigation." *Heintz*, 514 U.S. at 294.

*Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008) (attorney who is regularly engaged, directly and indirectly, in the collection of debts, is a debt collector under the FDCPA). There is no evidence before the court at this time as to whether or not the Green defendants regularly engage in debt collection, and as such are debt collectors. For this reason, the court rejects the Green defendants' claim that, as attorneys, they are excluded from the FDCPA's definition of a "debt collector."

The Green defendants also contend that they were not acting as "debt collectors" when they pursued the non-judicial foreclosure for HSBC, relying on the Sixth Circuit's opinion in *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003). The court agrees. In *Montgomery*, the court held that a bank collecting its own debts, through the use of a third party or a subsidiary agent, is not a "debt collector" where the bank was either the original creditor, *see* § 1692a(6)(F)(ii), or was collecting a debt which was not in default when obtained by the bank, *see* § 1692a(6)(F)(iii). *Montgomery*, 346 F.3d at 698-99. The court also held that a party enforcing a security interest, such as an agency repossessing vehicles, "falls outside the ambit of the FDCPA for all purposes, except for the purposes of § 1692f(6)." *Id.* at 700. Section 1692f(6) prohibits a person enforcing a security interest from "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement." It would appear that under *Montgomery*, a person enforcing a security interest through nonjudicial action cannot be subject to liability under FDCPA unless that person violates § 1692f(6).

The record does not support a § 1692f(6) claim against the Green defendants arising from the nonjudicial foreclosure of plaintiff's property. The Green defendants commenced foreclosure proceedings on June 5, 2008, the same day that MERS assigned plaintiff's mortgage to HSBC. *See* Elizabeth Nelson Aff. (docket no. 45-10). The foreclosure notice published in June 2008 stated in pertinent part that "Default has been made in the conditions of a mortgage made by HIWATHA GATHING, a single woman, to MERS . . . the mortgagee under the Security instrument . . . dated September 6, 2005, and record on September 19, 2005, in Liber 2647, on page 1363, Berrien County Records, Michigan . . ." Affidavit of Publication (docket no. 45-11). Plaintiff has presented no evidence to contest the fact that her mortgage was in default on that date. Viewing this evidence in the light most favorable to plaintiff, the debt was in default on June 5, 2008, when the Green defendants commenced foreclosure proceedings.

Plaintiff also alleged that the Green defendants pursued a wrongful foreclosure because HSBC did not have standing to foreclose the mortgage on the property. Compl. at ¶¶ 59, 78. This claim is without merit. Under Michigan law, "[t]he right to foreclose by advertisement is conferred solely by the statute, and its provisions must be strictly complied with." *Dohm v. Haskin*, 88 Mich. 144, 147, 50 N.W. 108 (Mich. 1891). Michigan's statute authorizing foreclosure of a mortgage by advertisement provides in pertinent part as follows:

(1) Subject to subsection (4) [not applicable here], a party may foreclose a mortgage by advertisement if all of the following circumstances exist:

(a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.

(b) An action or proceeding has not been instituted, at law, to recover the debt secured by the mortgage or any part of the mortgage; or, if an action or proceeding has been instituted, the action or proceeding has been

discontinued; or an execution on a judgment rendered in an action or proceeding has been returned unsatisfied, in whole or in part.

(c)  The mortgage containing the power of sale has been properly recorded.

(d)  The party foreclosing the mortgage is either the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage.

*        *        *

(3)  If the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title shall exist prior to the date of sale under section 3216 evidencing the assignment of the mortgage to the party foreclosing the mortgage.

M.C.L. § 600.3204.

Two other statutory provisions are also relevant.  M.C.L. § 600.3212 sets forth the requirements for the notice of foreclosure:

Every notice of foreclosure by advertisement shall include all of the following:

(a)  The names of the mortgagor, the original mortgagee, and the foreclosing assignee, if any.

(b)  The date of the mortgage and the date the mortgage was recorded.

(c)  The amount claimed to be due on the mortgage on the date of the notice.

(d)  A description of the mortgaged premises that substantially conforms with the description contained in the mortgage.

(e)  For a mortgage executed on or after January 1, 1965, the length of the redemption period as determined under section 3240.

M.C.L. § 600.3216 specifies the time and place of the sale as follows:

The sale shall be at public sale, between the hour of 9 o'clock in the forenoon and 4 o'clock in the afternoon, at the place of holding the circuit court within the

county in which the premises to be sold, or some part of them, are situated, and shall be made by the person appointed for that purpose in the mortgage, or by the sheriff, undersheriff, or a deputy sheriff of the county, to the highest bidder.

Plaintiff apparently contends that the foreclosure was wrongful because a record chain of title did not exist establishing HSBC as the assignee of the mortgage. Compl. at ¶ 60. Plaintiff's claim is without merit. Plaintiff has apparently relied on a prior version of § 600.3204(1)(c), which required that a party may foreclose by advertisement only if a chain of title exist "evidencing the assignment of the mortgage to the party foreclosing the mortgage," and a prior version of § 600.3212, which contemplated a recorded assignment prior to the publication, requiring the notice to include "[t]he names of the mortgagor, the mortgagee, and the foreclosing assignee *of a recorded assignment of the mortgage*." The current version of § 600.3204(1)(c), which is applicable to plaintiff's case, does not require a record chain of title at the commencement of the publication. Similarly, the italicized language in § 600.3212 has been removed. *See* P.A. 2003, No. 186. Under the statutory scheme in place in June 2008, it was not necessary to record the assignment to HSBC prior to the first notice of publication. It is undisputed that the assignment to HSBC was recorded on June 10, 2008 and that a record chain of title existed several weeks before the Sheriff's Sale on July 24, 2008, as required by § 600.3204(3).

Finally, plaintiff contends that the foreclosure was defective because "[d]efendants failed to cause the notice of foreclosure sale to be re-published in the newspaper in which the original notice was published due to an adjournment on July 10, 2008 and rescheduled for July 24th at 11:00 a.m." Compl. at ¶ 61. This contention is also without merit. The record reflects that the Berrien County Deputy Sheriff adjourned the sale twice, first to July 10, 2008 and then to July 24, 2008, by posting a notice of the adjournment in a conspicuous place in the Berrien County

Courthouse (i.e., the place of the sale). *See* Notice of Adjournment of Mortgage Foreclosure Sale (docket no. 45-13). The Deputy Sheriff's adjournment was appropriate under Michigan law, which permits a party to adjourn a foreclosure sale from week to week without having to re-publish a notice of the adjournment every week. *See* M.C.L. § 600.3220 ("[s]uch sale may be adjourned from time to time, by the sheriff or other officer or person appointed to make such sale at the request of the party in whose name the notice of sale is published by posting a notice of such adjournment before or at the time of and at the place where said sale is to be made").

Viewing this evidence in the light most favorable to plaintiff, the court concludes that the Green defendants properly foreclosed the mortgage. There was no violation of § 1692f(6). Accordingly, the Green defendants are entitled to summary judgment on plaintiff's FDCPA claims.

### 3. Wells Fargo and Litton

The record reflects that Litton became the servicing agent on plaintiff's loan as of November 1, 2008. Plaintiff alleged that Wells Fargo was assigned the mortgage on November 13, 2008, that Litton is its servicing agent, that Wells Fargo is a debt collector, and that Wells Fargo is vicariously liable for Litton's acts under the doctrine of respondeat superior. *See* Compl. at ¶¶ 26-30.

Wells Fargo and Litton do not address the merits of plaintiff's four alleged FDCPA violations (§§ 1692e(2), 1692e(5), 1692f and 1692f(6)). Rather, these two defendants assert that they are not "debt collectors" under the FDCPA, because "[t]his matter involved a mortgage foreclosure by advertisement which is the enforcement of a security interest" and "[n]o deficiency was sought." Defendants' Brief at 12-13 (docket no. 38).

23

As an initial matter, the court finds Litton's argument that it is merely enforcing a security instrument on the subject property to be meritless on its face. The record reflects: that in a notice dated November 8, 2008, Litton identified itself as a debt collector for plaintiff's loan no. 0041175167 and sent plaintiff coupons to make loan payments; that in a "validation of debt notice" dated November 13, 2008, Litton identified itself as a debt collector, and identified the debt to be collected as loan no. 0041175167 in the amount of $78,892.66; and that in a letter to plaintiff dated December 5, 2008, Litton identified itself as a debt collector. *See* docket nos. 1-20, 1-21 and 1-22. These letters contradict Litton's argument that its involvement was limited to the enforcement of a security interest (i.e., the nonjudicial foreclosure of plaintiff's mortgage).

In addition, Wells Fargo's and Litton's reliance on *Montgomery*, 346 F.3d 693, for the proposition that they are not debt collectors, is misplaced. As previously discussed, *Montgomery* held that a creditor was not debt collector under the exceptions as set forth in § 1692a(6)(F)(ii) and (iii). These exclusions do not apply to Litton, because it was not plaintiff's creditor. While Wells Fargo is allegedly a creditor of plaintiff, it neither originated the debt (§ 1692a(6)(F)(ii) nor obtained the debt when it "was not in default" (§ 1692a(6)(F)(iii)). In addition, neither Wells Fargo nor Litton were involved in enforcing the security interest through the non-judicial foreclosure of plaintiff's property. Accordingly, these two defendants cannot rely on the exclusions to the FDCPA discussed in *Montgomery*.

Finally, the court notes that genuine issues of fact exist on the current record with respect to the status of both Litton and Wells Fargo. The foreclosure notices published in June 2008 identified the debt as owned by "HSBC Bank USA National Association, as Indenture Trustee under the Indenture relating to Peoples Choice Home Loan Securities Trust Series 2005-4." *See* docket

no. 45-11. In the November 13, 2008 validation of debt notice, Litton states, without reference to any assignment or other documentation, that Wells Fargo is "[t]he creditor to whom the debt is owed," and that Litton "is collecting the debt" on its behalf. *See* docket no. 1-21. A few weeks later, in the letter to plaintiff dated December 5, 2008, Litton states, without reference to any assignment or other documentation, that HSBC owns the debt, i.e., "[t]he name and current holder of the debt is HSBC Bank Usa, National Association, As Indenture Trustee For The Benefit Of People's Choice Home Loan Securities Trust Series 2005-4." *See* docket no. 1-22. From this record, the court cannot determine whether Litton is acting on behalf of HSBC, Wells Fargo, or both.

Defendants Wells Fargo and Litton have failed to demonstrate that they are entitled to summary judgment on plaintiff's four claims brought pursuant to the FDCPA. Accordingly, their motion for summary judgment should be denied.

> **B.     Plaintiff's state law claims against First National Mortgage, MERS, HSBC, PMSI, Battin, Law Offices of Richard A. Green and Attorney Green**

After a full and liberal review of plaintiff's complaint, the court notes that plaintiff did not name MERS as violating either TILA or the FDCPA. Based on this review, the court concludes that plaintiff did not allege that MERS violated any federal statutes. As previously discussed, plaintiff's federal claim against First National Mortgage should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). In addition, HSBC, PMSI, Battin, Law Offices of Richard A. Green and Attorney Green are entitled to summary judgment with respect to plaintiff's federal claims asserted against them. The only claims against these defendants which remain are plaintiff's 15 state law claims.

Title 28 U.S.C. § 1367 provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court exercised its supplemental jurisdiction over plaintiff's state law claims, presumably because those claims were intimately related to the alleged violations of TILA and FDCPA. Because plaintiff does not have viable federal claims against First National Mortgage, MERS, HSBC, PMSI, Battin, Law Offices of Richard A. Green and Attorney Green, the court should re-examine whether to exercise supplemental jurisdiction over plaintiff's state law claims asserted against them.

Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998). As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).

Here, the court finds no reason to retain supplemental jurisdiction over plaintiff's numerous state law claims asserted against First National Mortgage, MERS, HSBC, PMSI, Battin, Law Offices of Richard A. Green and Attorney Green. Accordingly, the court should dismiss the state law claims alleged against these six defendants as alleged in Counts 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16, 17 and 18.

### C.     Plaintiff's state law claims against Wells Fargo and Litton

The court has concluded that plaintiff's FDCPA claims alleged against Wells Fargo and Litton are not subject to summary judgment at this time.  Because plaintiff has a federal claim remaining against these two defendants, the court will address their motion for summary judgment with respect to the state law claims alleged against them in Counts 8, 10, 11, 14, 16 and 17.

### 1.     Count 8 (Slander of credit)

Plaintiff alleged that the "actions and inactions" of defendants "have impaired her credit causing her to lose the ability to have good credit entitling her to damages, including statutory punitive damages pursuant to state and federal law, all to be proved at the time of trial."  Compl. at ¶ 126.  Plaintiff does not allege statutory authority or facts to support a claim of "slander of credit" arising from a mortgage foreclosure, and this court has declined to recognize such a claim.  *See Robbins v. Mortgage Electronic Registration Systems, Inc.*, No. 1:09-cv-295, 2009 WL 3757443 at *7 (Nov. 9, 2009) ("[p]laintiffs have not identified any authority for their [slander of credit] claim, and the Court is not aware of any authority for such a cause of action").  Accordingly, defendants' are entitled to summary judgment on plaintiff's cause of action for "slander of credit" alleged in Count 8.

### 2.     Count 10 (Negligent or wanton hiring)

Plaintiff alleged that Wells Fargo (as well as First National Mortgage, HSBC, PMSI, and Attorney Green) "negligently or wantonly hired, trained, supervised or retained its agents or employees in this action."  Compl. at ¶¶ 133-136.  "To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) a breach of that duty, (3) causation, and (4) damages."  *Case v. Consumers Power Company*, 463 Mich. 1,

6, 615 N.W.2d 17 (2000). The tort of negligent hiring typically arises from a criminal act committed by an employee against a third party. *See Hersh v. Kentfield Builders, Inc.*, 385 Mich. 410, 412-16, 189 N.W.2d 286 (1971). For example, the law imposes a duty of care on an employer in the hiring of employees, such that an employer may be liable if he knew or should have known that an employee had criminal tendencies (e.g., "a violent or vicious nature which was likely to result in injury to someone") and placed that employee in a position to meet members of the public. *Id*. With respect to plaintiff's other negligence claims, the relationship between an employer and employee does not, in and of itself, form the basis for a negligent supervision claim by a third-party. *See Millross v. Plum Hollow Golf Club*, 429 Mich. 178, 196-97, 413 N.W.2d 17 (1987) (the special relationship between an employer and employee does not require the employer to protect third-parties from off-premises injuries in the absence of "special circumstances" that could establish a duty of care to third persons).

Plaintiff also alleged that Wells Fargo acted "wantonly." "Willful and wanton misconduct arises from: (1) knowledge that a situation requires the exercise of ordinary care and diligence to avert another's injury; (2) a defendant's ability to avoid the injury by exercising such care and diligence; and (3) intent to harm or indifference to harm tantamount to a willingness that it occur." *Montgomery v. Department of Natural Resources*, 172 Mich.App. 718, 721, 432 N.W.2d 414 (1988), citing *Burnett v. City of Adrian*, 414 Mich. 448, 455-456 and n. 2, 326 N.W.2d 810 (1982). "The first and second elements amount to no more than ordinary negligence. It is the third element which raises the act to the level of willful and wanton misconduct." *Id.* However, "mere negligence is not converted into wanton misconduct by the use of the word 'wanton' in connection

with the specifications of negligence." *Richardson v. Grezeszak*, 358 Mich. 206, 215, 99 N.W.2d 648 (1959).

Plaintiff has not set forth any allegations to support her claim that Wells Fargo acted negligently or wantonly in the hiring, training, supervision or retention of its agents or employees. Plaintiff's complaint does not allege criminal acts committed by a Wells Fargo agent or employee, any special circumstances that would establish a negligent supervision claim against Wells Fargo, or any allegation that Wells Fargo failed to train a particular employee. Plaintiff's only allegation against Wells Fargo is that this entity currently owns her mortgage debt. Accordingly, Wells Fargo is entitled to summary judgment on this claim alleged in Count 10.

### 3.        Count 11 (Joint venture liability)

Plaintiff alleged that Wells Fargo, along with some of the other defendants (the Law Offices of Richard A. Green, First National Mortgage, HSBC, and PMSI), engaged in a joint venture which injured plaintiff. Under Michigan law, a joint venture is defined as "an association to carry out a single business enterprise for a profit." *Berger v. Mead*, 127 Mich.App. 209, 214, 338 N.W.2d 919 (1983). The Michigan Supreme Court has provided a working definition of a joint venture:

> It can be said that a joint adventure contemplates an enterprise jointly undertaken; that it is an association of such joint undertakers to carry out a single project for profit; that the profits are to be shared, as well as the losses, though the liability of a joint adventurer for a proportionate part of the losses or expenditures of the joint enterprise may be affected by the terms of the contract. There must be a contribution by the parties to a common undertaking to constitute a joint adventure [] and a community of interest as well as some control over the subject matter or property right of contract.

*Goodwin v. S.A. Healy Co.*, 383 Mich. 300, 308-309, 174 N.W.2d 755 (1970) (quoting *Hathaway v. Porter Royalty Pool, Inc.*, 296 Mich. App. 90, 102-103, 295 N.W. 571 (1941)( internal quotations and citations omitted). *See Berger*, 127 Mich. App. at 214-215 (summarizing the six elements of

a joint venture as: an agreement indicating an intention to undertake a joint venture; a joint undertaking of the venture; a single project for profit; a sharing of profits as well as losses; contribution of skills or property by the parties; community interest and control over the subject matter of the enterprise). "The key consideration is that the parties intended a joint venture." *Id.* at 215.

Plaintiff has not alleged any facts to establish that Wells Fargo and the other entities established a joint venture to injure her by foreclosing a mortgage on her property. Nothing in the documents or affidavits presented to this court suggests that Wells Fargo engaged in such a joint venture with the other defendants. Rather, the documents and affidavits reflect activity which typically occurs during the mortgage foreclosure process. Accordingly, Wells Fargo is entitled to summary judgment on the "joint venture" claim alleged in Count 11.

### 4.      Count 14 (Breach of fiduciary duty)

Plaintiff alleged that all defendants breached a fiduciary duty: by concealing and suppressing material facts from plaintiff; by committing illegal, unlawful and deceptive acts and practices against plaintiff; by fraudulently recording an assignment of mortgage; by defrauding plaintiff of her home; by failing to rescind plaintiff's mortgage; and by putting their interests above plaintiff's interests. Compl. at ¶¶ 150-152. "Michigan courts do not impose a fiduciary duty on banks arising from ongoing business relations." *Glidden Co. v. Jandernoa*, 5 F.Supp.2d 541, 549 (W.D. Mich.1998). "A fiduciary relationship, which generally does not arise within the lender-borrower context, exists when there is a reposing of faith, confidence, and trust and the placing of reliance by one on the judgment and advice of another." *Farm Credit Services of Michigan's Heartland, P.C.A. v. Weldon*, 232 Mich.App. 662, 680, 591 N.W.2d 438 (1998). A

borrower's allegations of inexperience and reliance on the lender do not create a fiduciary relationship. *See Ulrich v. Federal Land Bank of St. Paul*, 192 Mich. App. 194, 196-97, 480 N.W.2d 910 (1991). Plaintiff has not alleged any facts that would give rise to a fiduciary relationship between herself and either Wells Fargo or Litton. Wells Fargo allegedly owns plaintiff's mortgage debt and Litton allegedly services that debt. Accordingly, Wells Fargo and Litton are entitled to summary judgment on plaintiff's breach of fiduciary duty claim as alleged in Count 14.

5.     **Count 16 ("The State Act MCL 445.251 et seq.") and Count 17 ("The Occupation Code MCLA 339.901 et seq.")**

In Count 16, plaintiff alleged that all defendants violated the Michigan Collection Practices Act, M.C.L. § 445.251 *et seq.*, which she refers to as "the State Act" as follows: by "[u]sing false and deceptive means in an attempt to establish rights, title and interest in an attempt to collect a debt;" by "making an inaccurate, untrue, misleading or deceptive statement or claim in a communication to collect a debt;" by "[t]aking or threatening to take an action that cannot legally be taken by misrepresenting in a communication with a debtor any of the following: (i) The legal status of of a legal action being taken or threatened. (ii) The legal rights of the debtor;" "by failing and refusing to provide the written debt validation notice required therein;" and "by using harassing, oppressive, or abusive method to collect a bet to wit: fraudulent acts and misrepresentation of facts." Compl. at ¶¶ 158-160.

In Count 17, plaintiff alleged violations of the Michigan Occupational Code, M.C.L. § 339.901 *et seq.* as follows: § 339.915(e) ("by making an inaccurate, untrue, misleading or deceptive statement or claim in a communication to collect a debt," and by "[t]aking or threatening to take action that cannot legally be taken by misrepresenting facts in a communication an of the following: (i) The legal status of a legal action being taken or threatened. (ii) The legal rights of the

debtor"); § 339.915 ("by failing and refusing to provide the written debt validation notice required therein"); § 339.915(n) ("by using a harassing, oppressive, or abusive method to collect a debt to-wit; fraudulent acts and misrepresentations of facts to establish unlawful ownership in another's property"); and § 339.918 ("by failing and refusing to provide the written debt validation notice required therein"). Compl. at ¶¶ 161-162.

Wells Fargo and Litton do not address plaintiff's claims under the Michigan Collection Practices Act other than to assert that neither defendant is a "collection agency" under the definition in the Michigan Occupational Code (i.e., "a person directly or indirectly engaged in soliciting a claim for collection or collecting or attempting to collect a claim owed or due or asserted to be owed or due another").[10] While defendants recite unidentified portions of the Occupational Code, they do not refer to plaintiff's allegations or discuss any of the documents to explain their position. *See* Defendants' Brief at 13-14. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Furthermore, it appears to the court that genuine issues of material fact exist with respect to these two state law claims. For example, it is unclear from the record as to when Wells Fargo took ownership of plaintiff's mortgage debt and its role in the collection process. In addition, Litton's claim that it is not a "collection agency" under the Michigan Occupational Code appears contrary to Litton's notices sent to plaintiff identifying itself as a debt collector. Defendants'

---

[10] Wells Fargo and Litton argue that the Michigan Consumer Protection Act, M.C.L. § 445.901 *et seq.*, does not apply to a dispute arising from a mortgage foreclosure. *See* Defendants' Brief at 15-18 (docket no. 38). These arguments do not appear relevant, because plaintiff does not allege a claim under that act.

conclusory arguments fail to meet their "initial burden of establishing an absence of evidence to support the nonmoving party's case" with respect to the alleged violations of M.C.L. §§ 445.251 *et seq*. and 339.901 *et seq*. *Copeland*, 57 F.3d at 478-79.

Accordingly, Wells Fargo and Litton's motion for summary judgment should be denied as to these claims alleged in Counts 16 and 17.

### IV.    Recommendation

For these reasons, I respectfully recommend:

That the motion for summary judgment filed by HSBC (docket no. 38) be **GRANTED** as to Counts 1, 2 and 15;

That the motion for summary judgment filed by Litton and Wells Fargo (docket no. 38) be **GRANTED** as to Counts 8, 11 and 14, and **DENIED** as to Counts 15, 16 and 17;

That the motion for summary judgment filed by PMSI and Battin (docket no. 42) be **GRANTED** as to Count 15;

That the motion for summary judgment filed by the Law Offices of Richard A. Green and Attorney Green (docket no. 45) be **GRANTED** as to Count 15;

That plaintiff's Count 1 should be **DISMISSED** as to First National Mortgage for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

That plaintiff's state law claims alleged in Counts 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 16 and 17 against First National Mortgage, MERS, HSBC, PMSI, Battin, Law Offices of Richard A. Green and Attorney Green be dismissed for lack of supplemental jurisdiction pursuant to 28 U.S.C. § 1367; and,

That First National Mortgage, MERS, HSBC, PMSI, Battin, Law Offices of Richard

A. Green and Attorney Green be **DISMISSED** from this action.


Dated:  February 16, 2010                    /s/ Hugh W. Brenneman, Jr.
                                             HUGH W. BRENNEMAN, JR.
                                             United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).